D. LEE MASON *vs.* MINNEAPOLIS STREET RAILWAY CO.

Submitted on briefs June 26, 1893.   Reversed July 20, 1893.

**Evidence Sufficient to Go to the Jury.**

*Held,* that upon the evidence in this case the questions of negligence and contributory negligence should have been submitted to the jury.

Appeal by plaintiff, D. Lee Mason, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made February 18, 1893, denying his motion for a new trial.

Plaintiff brought this action in behalf of his minor son, Fred L. Mason (1878 G. S. ch. 66, § 34). The boy was born November 15, 1886. He was injured August 28, 1891. When plaintiff's evidence was all in, the court on motion of defendant, the Minneapolis Street Railway Company, dismissed the action. Plaintiff made a case containing exceptions and asked a new trial. Being denied, he appeals.

*Larrabee & Gammons,* for appellant.

1st. There was evidence, if the same had been submitted, from which a jury would have been justified in finding that defendant was guilty of negligence which caused the injury to the infant. 2nd. The boy was not guilty of contributory negligence sufficient to defeat his recovery, if defendant was negligent. He was not at years of discretion. 3rd. The law of this state is that the negligence of parents is imputable to the child. But the jury, on the evidence, could well have found that the parents were not guilty of any negligence in the circumstances.

*Koon, Whelan & Bennett,* for respondent.

When, through his own tort, an infant causes an injury to himself, he ought not to be permitted to recover from others for such injury, unless their acts were of such a character as to amount to wanton or willful misconduct, and were the immediate cause of such injury. *Pennsylvania R. Co.* v. *Morgan,* 82 Pa. St. 134; *Scheffler* v. *Minneapolis & St. L. R. Co.,* 32 Minn. 518; *Locke* v. *First Div. St. Paul & Pac. R. Co.,* 15 Minn. 350, (Gil. 283.)

Doubtless it was the duty of the motoneer to watch this child and prevent his getting in front of the car, or to stop the car in case the child got in front of it. But he was not bound to neglect the management of his motor, to watch the side of his train after it had safely passed this child, at a distance of several feet from him, to see if he would do such an extraordinary and unreasonable act as to attempt to catch onto the hind car, and thus slip under its wheels. He was not bound to stop his car in the street on the mere supposition that the child might possibly do such an unreasonable and unexpected thing. *Bulger* v. *Albany Ry.,* 42 N. Y. 459; *Hestonville P. Ry. Co.* v. *Connel,* 88 Pa. St. 520.

In *City of St. Paul* v. *Kuby,* 8 Minn. 154, (Gil. 125,) and *Railroad Co.* v. *Gladmon,* 15 Wall. 401, a child, even as young as the one in question, is held to some responsibility for his own safety.

MITCHELL, J. Action to recover damages for personal injuries to plaintiff's infant son, caused by the alleged negligence of defendant's servants in operating one of its cars. The only question is the correctness of the action of the trial court in dismissing the case when plaintiff rested.

There was evidence tending to prove the •following facts: A train consisting of a motor and trailer was going north on Nicollet avenue at the rate of about three miles an hour. When it was a short distance north of Twenty-Sixth street, plaintiff's child, a boy aged four years and nearly ten months, who had been playing on the sidewalk quite a little distance north of where the train then was, started and ran out into the street, with his hands or arms extended out in front of him, as if to intercept the approaching cars, or, as expressed by some of the witnesses, "as if

he was going to catch hold of something." The motoneer stood on the front platform of the motor, and, so far as appears, was the only employe on the cars who saw the child until after the accident. While the child was still from twelve to seventeen feet from the track, and the head of the train about the same distance south of him, the motoneer, seeing him, both "hollered" and motioned to him to go back. In view of the distance traversed by the cars after this and before the accident, it would seem that the child must, after the warning, have somewhat slackened his pace, but the testimony of the bystanders is that he continued to run, in the same attitude as before, until he reached the moving cars, which by this time had all passed that point, except the rear of the hind car; the entire length of the two cars being about fifty-two feet. The side of the car next to the child was closed or covered by a screen or netting to prevent passengers from getting off and on at that side. On reaching the cars, the child attempted to catch hold of this netting just in front of the hind wheels of the rear car, and in doing so fell or was thrown down with his foot across the rail, which was crushed by the wheel of the car. It also appeared that after the motoneer had warned the child he left his brake, stepped to one side, and turned his head, as if looking back, watching the child. It does not appear distinctly how long the motoneer continued to watch the child, or at what exact point of time he turned and applied the brake to the cars, but from the evidence the jury might have found that he did not attempt to stop the cars until the boy was thrown down, or at least until he saw that the boy was in the act of laying hold of the cars, when he quickly turned around and applied the brake, and brought the cars to a stop within a distance of from twenty-five to fifty feet. The cars could have been stopped in about twenty-five feet by the application of the brake, and, in case of necessity, in four or five feet, by reversing the current of electricity. We do not understand, however, that it is claimed that the motoneer was negligent in not stopping the cars quickly enough after he applied the brake, but the contention is that, on seeing a child of this tender age approaching in a manner indicating that he was going to attempt to take hold of the cars, he ought, in the exercise of due care, to have stopped them before the child reached them. To determine when the evidence on a question of negligence makes a case for the

jury is not always an easy matter. The present case is very near the line, but, after a good deal of consideration of the matter, and not without some hesitation, the majority of the court have arrived at the conclusion that the question of the motoneer's negligence should have been submitted to the jury, and for the following reasons: They think that the jury might have found from the evidence that the motoneer had good reason to apprehend that, notwithstanding the warning, the child was going to attempt to lay hold of the car, and, if so, that it was a fair question for the jury whether or not, in view of his very tender age, reasonable care required the motoneer to stop the cars before the child approached near enough to do so. We are also of opinion that, in view of the child's youth, the question whether he was guilty of contributory negligence was also one for the jury.

Order reversed.

(Opinion published 55 N. W. Rep. 1122.)